**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**HAROLD J. SCOTT**,

                              Plaintiff,

         - v -                              Civ. No. 9:10-CV-00230
                                                   (NAM/RFT)

**M. NICHOLS**, *Tier III Assistant*, **JAMES PAGANO**, *Tier III Hearing Officer*, **J. GREY**, *Officer-In-Charge of Urinalysis Testing Program, Great Meadow Correctional Facility*, **P. VANGUILDER,** *Deputy Superintendent of Security Services of Great Meadow Correctional Facility*, **DARWIN LECLAIR**, *Superintendent, Great Meadow Correctional Facility*, **KEITH F. DUBRAY**, *Acting Director of the State Department of Correctional Services ("DOCS"), Special Housing Unit & Inmate Disciplinary Program and Urinalysis Program,*

                              Defendants.

**APPEARANCES:**　　　　　　　　　　　　**OF COUNSEL:**

**HAROLD J. SCOTT**
84-A-4541
Plaintiff, *Pro Se*
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

**HON. ERIC T. SCHNEIDERMAN**　　　　　**MICHAEL G. MCCARTIN, ESQ.**
Attorney General of the State of New York　　Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

     Plaintiff Harold J. Scott brings this civil rights claim, pursuant to 42 U.S.C. § 1983, alleging

that Defendants violated his due process rights in connection with a prison disciplinary hearing.

Dkt. No. 1, Compl. Defendants have moved for Summary Judgment, Dkt. No. 56, claiming, *inter alia,* that Plaintiff: (1) failed to state a cause of action for denial of due process; (2) should be collaterally estopped from relitigating certain issues; (3) has failed to allege personal involvement on behalf of Defendants LeClair, Dubray, or VanGuilder; and, (4) Defendants are entitled to qualified immunity. *See generally* Dkt. No. 56-13, Defs.' Mem. of Law. Plaintiff opposes the Motion. Dkt. Nos. 65, Pl.'s Opp'n, & 68, Pl.'s Am. Opp'n. For the reasons that follow, we recommend that Defendants' Motion for Summary Judgment be **GRANTED**.

## I. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the

facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## B. Summary of Facts

The following facts are undisputed.

On February 18, 2007, Defendant Grey obtained a urine sample from Plaintiff. Dkt. No. 56-3, Defendants' Statement Pursuant to Rule 7.1(a)(3) (hereinafter "Defs.' 7.1 Statement") at ¶ 5. On February 20, 2007, Plaintiff's urine sample tested positive for opiates. *Id.* at ¶ 9. Defendant Grey then re-tested Plaintiff's sample, and once again detected opiates. *Id.* at ¶ 12. Defendant Grey then wrote a misbehavior report charging Plaintiff with use of a controlled substance in contravention of prison rules and attached a copy of the urinalysis request and procedure forms, as well as the test results. *Id.* at ¶ 13. On February 21, Plaintiff was served with a copy of those documents. *Id.* at ¶ 21. On February 23, Plaintiff met with Defendant Nichols, his Hearing Assistant, and provided him with a list of documents he wished to have as evidence for the disciplinary hearing. *Id.* at ¶ 25.

On February 26, Plaintiff appeared at a Tier III Disciplinary Hearing presided over by Defendant Pagano. Dkt. No. 56-9, Ex. A at p. 44, Tr. of Pl.'s Tier III Disciplinary Hr'g (hereinafter "Hr'g Tr."), at p. 1. Defendant Pagano called the Prison's Staff Pharmacist who testified that none of the medications Plaintiff was taking could have caused a false positive test for opiates. *Id.* at pp. 5–6. Plaintiff was then permitted to question the Staff Pharmacist. *Id.* Defendant Pagano also called Defendant Grey who testified regarding the procedures he used to conduct the urinalysis tests. *Id.* at pp. 9–17. Plaintiff then questioned Defendant Grey. *Id.* at pp. 11–17. Defendant Pagano ultimately found Plaintiff guilty of using a controlled substance and sentenced him to six months of confinement in a Special Housing Unit ("SHU"). *Id.* at p. 18. Plaintiff filed an administrative appeal and his sentence was later reduced to three months confinement in SHU. Defs.' 7.1 Statement at ¶ 2. Plaintiff was confined to SHU for ninety-two days. Pl.'s Opp'n at p. 5.

Thereafter, Plaintiff commenced an Article 78 Proceeding before the New York State Appellate Division, Third Department. *See In re Scott v. Fischer*, 57 A.D. 3d 1035 (N.y. App., Div., 3d Dept. 2008). The Appellate Division confirmed the determination and Plaintiff was later denied leave to appeal by the New York State Court of Appeals. *Scott v. Fischer*, 12 N.Y.3d 705 (2009). Plaintiff then filed the instant action on or about March 1, 2010. *See* Compl.

### C. Collateral Estoppel

It is "clear that issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 83 (1984). Federal courts look to the law of the state in which the underlying decision was issued to determine "what preclusive effect the prior judgement" might have upon the current case. *Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir. 1996). Here, the prior judgment was rendered in New York, and, "[u]nder New York law, the doctrine of collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Burgos v. Hopkins*, 14 F.3d 787, 792 (2d Cir. 1994) (quoting *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 478 (1984) (internal quotations omitted)). For a previously litigated issue to have a preclusive effect in future litigation it must meet two requirements: "(1) [t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and (2) there must have been a full and fair opportunity to contest the decision now said to be controlling." *Id.* (citing *Schwartz v. Public Adm'r of Bronx*, 24 N.Y.2d 65, 71 (1969) (internal quotations omitted)). Initially, the burden falls on the moving party to establish the "identity of the issues,"

then the burden shifts to the challenging party to establish that "he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." *Khandhar v. Elfenbein*, 943 F.2d 244, 247-48 (2d Cir. 1991) (citing *Kaufman v. Eli Lilly and Co.*, 65 N.Y.2d 449, 456 (1985)).

Several issues raised by Plaintiff which are controlling in the instant action[1] are identical to issues which were previously litigated by the Plaintiff in his preceding Article 78 Action before the New York State Appellate Division, Third Department (hereinafter "State Court"). *Compare* Compl. *with* Dkt. No. 70-1, Pl.'s Art.78 Pet. (hereinafter "NYS Pet."). For example, in both suits Plaintiff alleged that his state and federal due process rights were violated by Defendants because, *inter alia*:

(1) he was not given, nor allowed to introduce certain "exculpatory" documentary evidence which he claimed was relevant to determining the validity of the urinalysis tests conducted by Defendant Grey. NYS Pet. at ¶¶17–26, 43–50, 150, & 152; Compl. at ¶¶ 21–29, 39–49, 110, & 112;

(2) the hearing officer refused to call Defendant Nichols as a witness. NYS Pet. at ¶¶ 37–42, & 159; Compl. at ¶¶ 51–53;

(3) the hearing officer was biased because he received copies of Plaintiff's prior drug testing records. NYS Pet. at ¶¶ 82–87 & 160–161; Compl. at ¶¶ 62–65; and

(4) he was completely deprived of pre-hearing assistance and thus unable to mount an effective defense to the charges against him. NYS Pet. at ¶¶ 27–33 & 148; Compl. at ¶¶ 30–34 & 107.

Based on the substantial similarity between the allegations made in the NYS Petition and those made in the instant Complaint, we find that Defendants have clearly met their burden of establishing the identity of these issues.

In attempting to meet his burden, Plaintiff argues, *inter alia,* that preclusive effect should not

---

[1] *See infra* Parts II.D.2(b) & (c)

be granted to the issues determined in the State Court proceeding because: (1) Defendants waived the affirmative defense of collateral estoppel by not pleading it in their Answer, Pl.'s Opp'n at p. 21; and (2) Plaintiff was not afforded a full and fair opportunity to litigate the issues in state court because he was denied leave to appeal, and new evidence pertinent to issues already litigated has since surfaced and must now be considered, *id.* at pp. 23–25.

We find no merit in Plaintiff's first argument, that Defendants waived the affirmative defense of collateral estoppel by failing to plead it in their Answer. The Second Circuit has noted that "the purpose of requiring collateral estoppel to be pled as an affirmative defense 'is to give the opposing party notice of the plea of estoppel and a chance to argue, if he can, why the imposition of an estoppel would be inappropriate.'" *Curry v. City of Syracuse*, 316 F.3d 324, 330-31 (2d Cir. 2003) (quoting *Blonder–Tongue Labs. v. Univ. of Ill. Found.,* 402 U.S. 313, 350 (1971)). Although there is a general preference that collateral estoppel be pled as an affirmative defense in the initial answer, the Second Circuit has allowed parties to raise collateral estoppel for the first time at the summary judgment stage where the other side has sufficient time to respond to the defense and is not unduly prejudiced by its later introduction. *Curry v. City of Syracuse*, 316 F.3d at 331; *Rose v. AmSouth Bank of Florida*, 391 F.3d 63, 65 (2d Cir. 2004).

It is clear that allowing Defendants to introduce the defense at this stage has not unduly prejudiced Plaintiff in this case. To begin with, at Plaintiff's request the Court extended the due date for his Response to Defendants' Motion for Summary Judgment twice, providing him with more than three additional months to prepare his Opposition to the defense. *See* Text Orders, dated April 20, 2012, and June 6, 2012. Moreover, in light of the eighteen pages of well reasoned and well supported argument Plaintiff has proffered in opposition to Defendants' collateral estoppel defense,

the notion that Plaintiff was not provided a reasonable opportunity to respond to Defendants' argument cannot be seriously entertained. *See* Pl.'s Opp'n at pp. 21–25; Dkt. No. 68-2, Harold J. Scott Aff., dated Jul. 5, 2012, at ¶¶ 150-208.[2]

Nor are we persuaded that Plaintiff was not afforded a full and fair opportunity to litigate his case during the State Court procedure. When analyzing whether a party received a full and fair opportunity to litigate an issue, courts in New York consider factors such as "the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation." *Ryan v. New York Tel. Co.*, 62 N.Y.2d at 501 (citations omitted).

There is nothing in the record to indicate that Plaintiff was prevented from or in any way limited in his ability to conduct discovery, present evidence, or cross examine witnesses at the Article 78 Proceeding. Additionally, Plaintiff's fifty-three page 174 paragraph, NYS Petition, complete with multiple exhibits, evinces a strong presumption that Plaintiff was not only aware of the importance of his claim, but that he had the incentive and initiative to litigate it vigorously. *See* Pl.'s NYS Pet. Likewise, although Plaintiff points out that he was not represented by counsel at the State Court proceeding, he does not claim that this prejudiced his ability to litigate his claim. In fact, the sophistication of Plaintiff's pleadings belie any such claim. *See* Scott Aff. at ¶ 193. It is also

---

[2] We further note that approximately thirteen pages of Plaintiff's collateral estoppel argument were surreptitiously included in his Affidavit, a clear attempt by Plaintiff to evade this Court's prior order limiting his Response to thirty-five pages. *See* Text Order, dated May 8, 2012; Scott Aff. at ¶¶ 150-208. However, in light of our recommendation that Defendants be allowed to introduce their estoppel defense for the first time at the summary judgment phase, and notwithstanding Plaintiff's clear attempt to frustrate our earlier ruling, the Court has considered the arguments Plaintiff included in his Affidavit as well as those in his Response, thus obviating any claim that the limitations this Court placed on his response may have somehow prejudiced his ability to oppose Defendants' estoppel defense.

clear from Plaintiff's Opposition that he foresaw the possibility of future litigation. *See e.g.,* Scott Aff. at ¶ 163 (stating that Plaintiff purposefully withheld certain claims to keep the case in state court). Moreover, Plaintiff does not attack nor contest the fullness or fairness of the State Court proceeding on any of the aforementioned grounds. Instead, Plaintiff argues that he was not provided a full and fair opportunity to litigate his previous lawsuit because his request for an appeal to the Court of Appeals was denied, and new evidence has since surfaced which warrants re-litigating certain issues. Plaintiff's arguments are unpersuasive.

Plaintiff is not guaranteed an appeal, only an *opportunity* to appeal. For purposes of collateral estoppel, it is of no consequence that his request was ultimately denied. *See Fuchsberg & Fuchsberg v. Galizia*, 300 F.3d 105, 110-11 (2d Cir. 2002) ("Discretionary denial by the New York Court of Appeals of a party's motion for leave to appeal . . . is not equivalent to the absence of an *opportunity* to appeal, and does not prevent the underlying decision of the Appellate Division from having collateral estoppel effect against that party in future proceedings") (emphasis in original). Here, Plaintiff received an *opportunity* to appeal, and the fact that his appeal to the Court of Appeals was denied does not prevent this Court from giving preclusive effect to the State Court's judgment.

Nor do we believe that the new evidence Plaintiff seeks to present warrants re-litigation of any of the issues already decided by the State Court. It is true that "[i]f significant new evidence is uncovered subsequent to the proceeding said to result in an estoppel of the present action, then it cannot be found that a party was afforded a full and fair opportunity to present his case in the absence of that evidence." *Khandhar v. Elfenbein*, 943 F.2d at 249 (citations omitted). However, evidence that is in existence at the time of an earlier proceeding, and capable of being discovered

at that time, is not "new evidence" merely because it is offered for the first time in a subsequent action for purposes of defeating collateral estoppel. *See Ryan v. New York Tel. Co.*, 62 N.Y.2d at 504.

Plaintiff argues that the following new evidence warrants against granting preclusive effect to the State Court's earlier determinations: (1) the Operator's Manual Preface, the Emit D.A.U. Opiate Assay Insert, the Syva Emit II Plus Ecstasy Insert, the Dade Behring Contract, media releases on Dade Behring, and (2) a statement from Defendant Grey that he did not use "all of the Operating Instruction Sheets for operating the Viva-Jr. Drug Test System." *See* Pl.'s Opp'n at p. 25; Dkt. No. 68-3, Ex. 18, Defs.' Lt., dated Apr. 27, 2012. We disagree with Plaintiff.

To begin with, the documents offered by Plaintiff are not "new." Rather, they were in existence and capable of being discovered and introduced at the time the State Court proceeding was conducted. *See* Scott Aff. at ¶¶ 196–202 (descriptions of new documents reveal that each pre-dated the State Court proceeding by several years); *see Ryan v. New York Tel. Co.*, 62 N.Y.2d at 504. Nor are these documents "significant" for purposes of collateral estoppel. Given enough time, the number of "relevant" documents a party to a litigation could dig-up is potentially limitless. Yet not all evidence is significant; and the documents produced by Plaintiff in this instance are at best, only tangentially relevant. Eschewing to present this evidence during the State Court proceeding "does not somehow transform them into 'new evidence' and is certainly not a basis for defeating the application of collateral estoppel." *Ryan v. New York Tel. Co.,* 62 N.Y.2d at 504.

Moreover, although Defendant Grey's "admission" lodged in a Status Report is new evidence, it is nonetheless wholly insignificant.[3] The State Court reviewed the actual procedures

---

[3] The statement was made for the first time in discovery during the instant action. *See* Dkt. No. 68-3, Ex. 18.

*-10-*

Defendant Grey followed in conducting the urinalysis on Plaintiff's urine, and they concluded that "[s]imply stated, the urainalysis testing machine was operated in compliance with the instructions of the manufacturer." *Scott v. Fischer*, 57 A.D. 3d at 1036.

Plaintiff has failed to meet his burden to establish that he was not afforded a full and fair opportunity to litigate these issues.[4] *See Khandhar v. Elfenbein*, 943 F.2d at 247-48. Therefore, we recommend that Plaintiff be precluded from re-litigating (1) whether Plaintiff was deprived of effective assistance; (2) whether Plaintiff was unconstitutionally denied the right to call Defendant Nichols as a witness, (3) whether documentary evidence relevant to the operation of the urinalysis machine was improperly excluded, and (4) whether the hearing officer was improperly biased by Plaintiff's prior drug testing records.[5] However, our analysis does not end here because Plaintiff has raised additional issues relating to his due process claims which were not raised in State Court.

## D. Due Process

The Due Process Clause of the Fourteenth Amendment protects against restraints or conditions of confinement that "exceed[] the sentence in . . . an unexpected manner[.]" *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To state a due process claim under § 1983, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir.

---

[4] We have considered Plaintiff's other arguments against applying collateral estoppel and find them to be without merit.

[5] Although the State Court did not explicitly discuss whether the hearing officer was biased by the introduction of the Plaintiff's prior drug testing records, this conclusion was implicit by virtue of the fact that Plaintiff raised the issue in his NYS Petition, and the State Court concluded its decision by noting that " Petitioner's remaining claims, including his challenge to the penalty imposed, have been reviewed and found to be lacking in merit." *Scott v. Fischer*, 57 A.D. 3d at 1037; *see Ford v. Krusen*, 2008 WL 190424, at * 6 (N.D.N.Y. Jan. 15, 2008) (asserting that where state court concludes that it considered all other claims and found them to lack merit, all claims raised in the prior suit, whether explicitly discussed or not, are subject to issue preclusion); *Moore v. Murphy,* 1995 WL 244705, at *5 (S.D.N.Y. April 26, 1995) (same conclusion). Moreover, in an abundance of caution we have reviewed these claims and found them to lack merit. *See infra* Part I.D.2(d).

*-11-*

1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Inmates' liberty interests are derived from two sources: (1) the Due Process Clause of the Fourteenth Amendment; and (2) state statute or regulations. *Id*. With regard to liberty interests arising directly under the Due Process Clause, the Supreme Court has "narrowly circumscribed its scope to protect no more than the 'most basic liberty interests in prisoners[,]'" *Arce v. Walker*, 139 F.3d at 333 (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)), and limited to freedom from restraint that "exceed[] the sentence in . . . an unexpected manner[,]" *Sandin v. Conner*, 515 U.S. 472, 478 (1995).

Turning to liberty interests created by the state, the Supreme Court states that such liberty interests shall be limited solely to those deprivations which subject a prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. at 484; *see also Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citing *Sandin*); *Welch v. Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999).

Factors relevant to an analysis of what constitutes an atypical and significant hardship include "(1) the effect of the confinement on the length of prison incarceration, (2) the extent to which the conditions of segregation differ from other routine prison conditions, and (3) the duration of the disciplinary segregation compared to discretionary confinement." *Spaight v. Cinchon*, 1998 WL 167297, at *5 (N.D.N.Y. Apr. 3, 1998) (citing *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (stating that in assessing what constitutes an atypical and significant hardship, "[b]oth the conditions [of confinement] and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical" (citation omitted)). Though the length of the confinement is one guiding factor in a *Sandin* analysis, the

Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard. *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999) (citations omitted). Nevertheless, the Court of Appeals has stated that "[w]here the plaintiff was confined for an intermediate duration – between 101 and 305 days – 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer v. Richards*, 364 F.3d at 64-65 (quoting *Colon v. Howard*, 215 F.3d 227, 232 (2d Cir. 2000)); *see also Hanrahan v. Doling*, 331 F.3d 93, 97-98 (2d Cir. 2003) ("[W]here the actual period of disciplinary confinement is insignificant or the restrictions imposed relatively minor, such confinement may not implicate a constitutionally protected liberty interest."); *Edmonson v. Coughlin*, 1996 WL 622626, at *4-5 (W.D.N.Y. Oct. 4, 1996) (citing cases for the proposition that courts within the Second Circuit tend to rule, as a matter of law, that "disciplinary keeplock or SHU confinement to 60 days or less in New York prisons is not an atypical or significant hardship in relation to the ordinary incidents of prison life"); *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000) (noting that segregative sentences of 125-288 days are "relatively long" and therefore necessitate "specific articulation of . . . factual findings before the district court could properly term the confinement atypical or insignificant"). Accordingly, the court must "make a fact-intensive inquiry" that would examine the actual conditions of confinement within SHU. *Palmer v. Richards*, 364 F.3d at 65 (citations omitted); *see also Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998); *Brooks v. DiFasi*, 112 F.3d 46, 49 (2d Cir. 1997). If the conditions of confinement are undisputed, a court may decide the *Sandin* issue as a matter of law. *Palmer v. Richards*, 364 F.3d at 65. If, however, normal conditions of SHU exist, but the period of confinement is longer than the intermediate duration, then it would constitute a significant departure from ordinary prison life requiring the protection of

procedural due process under *Sandin*. *Id*.

### 1. Liberty Interest

Plaintiff was segregated to SHU for a total of ninety-two days.[6] Pl.'s Opp'n at p. 5; Scott Aff. at ¶¶ 53 & 65. He further alleges significant variations between the conditions he experienced in SHU and those experienced by other inmates in general population as well as other SHU inmates, including: that he was not provided hot water to wash with, clean clothing to change into, clean bedding to sleep on, adequate soap, or allowed to leave his cell for the required one hour of daily exercise. Pl.'s Opp'n at pp. 3–5; Scott Aff. at ¶¶ 123 & 130–49. Given the length of his confinement and the differences between the conditions he experienced as opposed to those experienced by other SHU and general population inmates, we find based upon what has been presented, there may be an issue of fact whether Plaintiff's SHU confinement was atypical. *See Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999) (finding material issue of fact existed as to whether conditions of confinement were atypical or significant where plaintiff was confined to SHU for ninety-days and "unlike general population [inmates], [SHU inmates] receive[d] inadequate amounts of toilet paper, soap and cleaning materials, a filthy mattress, and infrequent changes of clothes."). Notwithstanding the presence of a possible issue of fact as to whether Plaintiff's confinement constituted an "atypical condition," the Court may still review the Record to determine if Plaintiff was afforded due process.

---

[6] Although Plaintiff was originally sentenced to six months of SHU confinement, his sentence was later reduced and ultimately he only served ninety-two days in SHU. Scott Aff. at ¶¶ 53 & 65; Pl.'s Opp'n at p.5. In the Second Circuit, it is the length of the *actual* punishment that is relevant in determining whether a period of SHU confinement implicates a cognizable liberty interest and not the length of the sentence imposed. *Scott v. Albury*, 156 F.3d 283, 287–88 (2d Cir. 1998) ("No right to due process is implicated in the prison context *unless* a liberty interest has been deprived, and we read *Sandin* [*v. Conner*] to require that we look to actual punishment in making this determination.").

2. Due Process

Thus, in our case, assuming the presence of a liberty interest, a prisoner placed in disciplinary segregation must be provided (1) advanced written notice of the charges against them at least twenty-four hours prior to the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) written statement as to the evidence relied upon and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974); *see also Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986); *Taylor v. Rodriguez*, 238 F.3d 188, 192 (2d Cir. 2001) (quoting *Hewitt v. Helms*, 459 U.S. at 476).

*a. Notice*

It is undisputed that on February 21, 2007, Plaintiff received a copy of the misbehavior report charging him with the use of a controlled substance in violation of prison rule 113.24, as well as copies of two urine tests which were positive for opiates. Dkt. No. 56-7, James M. Pagano Decl., dated Apr. 6, 2012, at ¶ 9; Dkt. No. 56-4, James Grey Decl., dated Apr. 5, 2012, at ¶¶ 17–20; Hr'g Tr. at p. 1; Dkt. No. 68-2, Scott Aff. at ¶ 4. Thereafter, on February 26, 2012, a Tier III Disciplinary Hearing on the issue was commenced. Hr'g Tr. at p. 1; Scott Aff. at ¶ 13. Therefore, we can find no due process violation stemming from a lack of notice because Plaintiff received written notice of the charges against him and the basis for the charges at least four full days before the hearing.

*b. Opportunity to Appear*

Plaintiff has claimed that he was not afforded a full and fair opportunity to appear, call witnesses, and present evidence. He attributes this to several factors, including: (1) that he was provided ineffective pre-hearing assistance, Compl. at ¶¶ 30–34 & 107; (2) he was denied the ability to call witnesses, *id*. at ¶¶ 51–53; and (3) relevant exculpatory documents were excluded, *id*. at ¶¶

*-15-*

21–29, 39–49, 110, & 112. As we have discussed, Plaintiff already litigated these precise issues in an earlier New York State Article 78 proceeding. *See supra* Part I.C. The State Court considered these allegations and determined, *inter alia,* that: "the Hearing Officer . . . provided petitioner with all of the documents that were relevant to the operation of the machine and the performance of each test," the "assistance he received was [not] so deficient as to prevent, or in any way impair, his ability to prepare and present a defense to the charges filed against him," and that the testimony of the witnesses Plaintiff was not permitted to call either "was not relevant or it was cumulative and redundant to evidence already produced at the hearing." *Scott v. Fischer*, 57 A.D.3d at 1036. Moreover, the record clearly establishes that Plaintiff was present at the hearing, was able to question witnesses and present rebuttal evidence. *See* Scott Aff. at ¶¶ 13–51; *see generally* Hr'g Tr. We have considered Plaintiff's remaining arguments on this issue and find that they lack merit. Thus, we can find no due process violation stemming from a constitutional deficiency in Plaintiff's opportunity to appear, call witnesses, or present rebuttal evidence. *See Wolff v. McDonnell*, 418 U.S. at 564-66.

*c. Written Statement*

As to the third *Wolff* factor, it has been clearly demonstrated that Plaintiff received a written statement of the disposition and the evidence relied upon at the hearing. Dkt. No. 56-9 at p. 69, Superintendent Hr'g Disposition Form, dated Dec. 26, 2007. The form clearly notes the disposition, the evidence relied upon, and was signed by the Plaintiff as having been received by him on December 26, 2007. *Id.* Plaintiff's argument that the written statement was procedurally deficient because Defendant Pagano asked him to sign the statement and notified him of his ability to appeal before "actually pronouncing him guilt[y]" is meritless. *See* Pl.'s Opp'n at p. 16. Thus, we can

perceive no constitutional deprivation arising from the written notice provided to Plaintiff.

### d. Remaining Arguments

As discussed above, it is clear that Plaintiff received all of the process required under *Wolff*. Thus, Plaintiff's only remaining viable due process claims are those pertaining to the impartiality of the hearing officer, Defendant Pagano. Plaintiff asserts several allegations which he claims show that Defendant Pagano had predetermined his guilt and was otherwise biased by improperly considered evidence such as his prior drug test results and off-the-record testimony. *See e.g.,* Dkt. No. 68, Pl.'s Opp'n, at pp. 7–9, 18, & 20; Scott Aff. at ¶ 37.

An inmate is *not* entitled to a hearing officer with the same level of impartiality required by judges; he is entitled however to a hearing untainted by arbitrary or pre-determined findings of guilt. *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989). A hearing officer's limited impartiality requirements are satisfied where the record contains "some evidence" to support the officer's findings. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

It is clear that Defendant Pagano based his decision, at least in part, on the positive urinalysis test results and the testimony of the Facility's Pharmacist that none of Plaintiff's prescription drugs could cause a false positive for opiates. No. 56-9 at p. 69. Moreover, we find that this evidence is more than sufficient to satisfy the "some evidence" requirement of *Superintendent v. Hill. Id.; Peranzo v. Coughlin*, 850 F.2d 125, 126 (2d Cir. 1988) (test results may be relied upon as sufficient evidence to warrant prison discipline under the standards of *Superintendent v. Hill*); *Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 124 (S.D.N.Y. 2002) ("[D]rug test results are considered valid evidence on which to base a disciplinary decision"); *Bolanos v. Coughlin*, 1993 WL 762112, at \*9 (S.D.N.Y. Oct. 15, 1993); *Hendrix v. Herman*, 1992 WL 551144, at \*4 (W.D.N.Y. Mar. 30, 1992).

Thus, we also find that Defendant Pagano met or exceeded his limited responsibility to be impartial. *See Superintendent v. Hill*, 472 U.S. at 445.

For all of these reasons we recommend that Defendants' Motion for Summary Judgment be **GRANTED.**

### E. Personal Involvement

In addition to his due process claim, Plaintiff has also alleged that Defendants LeClair, DuBray, and VanGuilder were each grossly negligent in their supervision, training, and oversight of Defendants Grey and Nichols, as well as in their supervision and creation of the drug testing and diciplinary hearing policies and procedures.

An individual cannot be held liable for damages under § 1983 merely because he holds a position of authority, but he can be held liable if he was personally involved in the alleged deprivation.

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).

Because we can find no evidence that Plaintiff's constitutional rights were violated, there can be no supervisory liability on behalf of Defendants LeClair, Dubray, and VanGuilder. Thus we recommend that Plaintiff's supervisory liability claims against these Defendants be **DISMISSED**.

### F. Qualified Immunity

Because we can find no evidence of any constitutional violations, we need not, and do not

discuss qualified immunity.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 56) be **GRANTED** and the entire action be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: March 8, 2013
Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge